# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6064 | **DATE** | July 21, 2003 |
| **CASE TITLE** | | Wheeler v. Aetna | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)　☐　Filed motion of [ use listing in "Motion" box above.]

(2)　☐　Brief in support of motion due _____.

(3)　☐　Answer brief to motion due_____. Reply to answer brief due_____.

(4)　☐　Ruling/Hearing on _____ set for _____ at _____.

(5)　☐　Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)　☐　Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)　☐　Trial[set for/re-set for] on _____ at _____.

(8)　☐　[Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)　☐　This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
　　　☐ FRCP4(m)　☐ General Rule 21　☐ FRCP41(a)(1)　☐ FRCP41(a)(2).

(10)　■　[Other docket entry]　We find as a matter of law that Aetna's termination of benefits for all of Bryce Wheeler's therapies was arbitrary and capricious. It appears that on the basis of this finding, summary judgment for the plaintiffs would be appropriate, but plaintiffs have not cross-moved for summary judgment. Therefore, we will give defendant leave to file a memorandum, if it wishes, showing cause why we should not enter summary judgment for plaintiffs. Defendant may file this memorandum by August 4, 2003. Defendant's motion for summary judgment [16-1] is denied. ENTER MEMORANDUM OPINION.

(11)　X　[For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | **JUL 23 200** | |
| | Notified counsel by telephone. | | date docketed | **25** |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 10/17/01 | |
| | Copy to _____ | | date mailed notice | |
| KAM | courtroom deputy's initials | Date/time received in central Clerk's Office | KAM | mailing deputy initials |

July 21, 2003



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL WHEELER and<br>BRYCE WHEELER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 01 C 6064 |
| | ) | |
| AETNA LIFE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the court is defendant Aetna Life Insurance Company's motion for summary judgment. For the reasons stated below, the motion is denied.

### BACKGROUND

Plaintiff Michael Wheeler claims that defendant, Aetna Life Insurance Company ("Aetna"), violated ERISA by wrongfully denying coverage for medical treatment of his son, co-plaintiff Bryce Wheeler, who suffers from various conditions, including autism. Aetna argues that the denial of benefits was reasonable based upon the medical records and language of the insurance plan.

The undisputed facts are as follows. Michael Wheeler is employed by Westmoreland Country Club ("Westmoreland") and at all relevant times was a participant in the insurance plan provided by Aetna, Group Insurance Policy Number 434025. Michael Wheeler's

*25*

son, Bryce, was born on March 8, 1994, and since March 1997 has been a covered dependent under the insurance policy.

## *Bryce Wheeler's Diagnoses*

When Bryce was 18 months old, he began to exhibit delays in speech development and deficits in motor skills, and he had hearing difficulties. In 1996, Bryce was evaluated by various medical specialists. An electroencephalogram (EEG) was performed, and was interpreted as "possibly abnormal" because of "left temporal slowing" or "subcortical abnormality in the left."[1] The report indicated that "the record is recorded in sleep only and should be cautiously interpretated [sic]. Perhaps repeated reconfirmation." (Aetna's Statement of Material Facts, Ex. B, at 559.) An MRI study of Bryce's brain performed around the same time was normal. (Id. at 560.)

In 1997, Bryce was diagnosed (by physicians at the Child Evaluation Center at the University of Louisville in Kentucky) with autism, central nervous system immaturity/dysfunction, speech and language delays, perceptual/fine motor and self-care skills delays, and sensory integration difficulties.[2] (Id. at 556-66, 648.)

---

[1] On the EEG report, the sentence containing these phrases apparently has a missing word: "This EEG is possibly abnormal because of left temporal slowing which could be seen with ------ or subcortical abnormality in the left." (Aetna's Statement of Material Facts, Ex. B, at 559.)

[2] "Autism" is defined in various ways and in various levels of detail, but here is a standard dictionary definition: "A mental disorder originating in infancy that is characterized by self-absorption, inability to interact socially, and language dysfunction." Merriam-Webster Online Dictionary (July 17, 2003), at http://www.merriam-webster.com.

Thereafter, Dr. Michael Chez, a pediatric neurologist and Bryce's primary treating physician, treated Bryce for "encephalopathy, receptive/expressive language delay, autism and pervasive developmental delay."[3] (_Id._ at 504-505.)

### _Plaintiffs' Requests for Benefits Payments for Various Therapies_

Plaintiffs' medical providers submitted bills to Aetna relating to speech therapy, occupational therapy, physical therapy, applied behavioral analysis therapy, and sensory integration therapy treatments for Bryce. There are four providers at issue here: (1) Early Intervention Approaches (physical therapy and applied behavioral analysis therapy); (2) Therapeutic Resources (occupational therapy and sensory integration therapy); (3) Children's Therapy and Resource Center (speech therapy); and (4)

---

[3] Aetna's statement of material facts states: "Dr. Michael Chez, a neurologist and Bryce Wheeler's primary treating physician, treated Bryce for receptive/expressive language delay, autism, pervasive developmental delay and "possible" encephalopathy," citing Dr. Chez's letter to Aetna dated September 23, 2000. (¶ 11.) However, this may not be a fair characterization of Dr. Chez's letter. The letter states: "Bryce is followed in our practice for a diagnosis of encephalopathy, receptive/expressive language delay, autism and pervasive developmental delay. He also has a history of abnormal EEG, which indicates a possible encephalopathic process, which may be contributing to his global delays including central auditory processing disorder and motor apraxia." (Aetna's Statement of Material Facts, Ex. B, at 504 (emphasis added).) The way in which the letter is phrased makes it difficult to tell if Dr. Chez has in fact diagnosed Bryce with encephalopathy or simply "possible" encephalopathy.

Aetna also states that "Dr. Chez's suggestion that Bryce has 'possible' encephalopathy is premised solely upon November 6, 1996 EEG conducted by Dr. Robert Tillet in which he found it was 'possibly abnormal.'" (Aetna's Statement of Material Facts, ¶ 12.) It appears to us that Aetna's attribution of the diagnosis "solely" to the EEG is pure conjecture. Dr. Chez does not state the premise for his diagnosis of encephalopathy or "possible" encephalopathy. Accordingly, paragraph 12 of Aetna's Statement of Material Facts is stricken as unsupported by the evidence.

"Encephalopathy" is defined as "a disease of the brain, especially one involving alterations of brain structure." Merriam-Webster Online Dictionary (July 17, 2003), at http://www.merriam-webster.com.

Zier & Associates (occupational therapy). Aetna sent letters to Early Intervention Approaches and Therapeutic Resources requesting additional information, including physician orders and treatment plans, initial treatment date, initial evaluation, therapy notes for each session, progress notes, anticipated length of therapy, discharge date, and credentials of the provider. Aetna received and reviewed records from those providers as well as from Children's Therapy and Resource Center and from Bryce's previous medical providers, some of which had diagnosed Bryce's conditions.

Aetna states that its claim processors, "without sending the claims for review, mistakenly and sporadically paid for some of" Bryce's treatments that it now contends are not covered under the policy. (Aetna's Statement of Material Facts, ¶ 38.) On April 6, 2000, Mary M. Hurley of Aetna sent Michael Wheeler a letter, quoted infra, notifying him that Aetna would not cover claims for physical therapy, occupational therapy, sensory integration therapy, or speech therapy not related to previous ear infections. The letter stated that sporadic claims that had been paid were done so in error, but that Aetna was not seeking overpayment refunds. Moreover, Ms. Hurley stated that there was still a possibility that coverage for the speech therapy would be allowed if the Wheelers submitted additional documentation detailing Bryce's treatments and showing that the loss of speech was related to prior ear infections. (Id., Ex. B, at 257-58.)

On June 8, 2000, Doni Dukarski of Aetna sent Mrs. Wheeler a letter reiterating what information Aetna required to review the denial of benefits for speech therapy and also requesting additional information "[t]o reconsider the Physical and Occupational therapies." (Id., Ex. B, at 360.) Ms. Dukarski stated that "this can be sent for additional review, if we provide enough information for the Medical area to get a complete picture of what's happened with Bryce." (Id.)

In November 2000, the Wheelers responded to Ms. Dukarski's letter, appealing the denial of benefits and attaching numerous documents detailing Bryce's medical history, diagnoses, therapies, and progress. (Id., Ex. B, at 509-511.)[4] The material submitted by the Wheelers included the September 2000 letter to Aetna from Dr. Chez containing his diagnoses of Bryce, as well as initial

---

[4] Although the Wheelers' letter states exactly what documents were enclosed with the letter, Aetna has not provided us with the enclosures in such a way that we can tell what specific documents Aetna received from the Wheelers with the letter (in other words, the enclosures do not follow the letter, in Exhibit B). This is not highly significant, but it is an example of the slipshod manner in which Aetna has submitted relevant documents. Exhibit B to Aetna's Statement of Material Facts is the 1366-page claim file for Bryce, and the claim file has not been presented in any way that would be helpful to the court. It is neither chronologically nor topically organized. Aetna's internal documents are mixed in with provider documents, and the claim file appears to contain multiple copies or versions of the same material. We have done our best to wade through Aetna's unorganized mound of paper.

Plaintiffs attach to their statement of material facts certain medical documents, including a letter from Dr. Chez dated November 20, 2002 (while this motion was being briefed). Aetna moves (in a footnote in its reply) to strike those documents because they were not part of the administrative record. Aetna's motion is denied as moot because we have not taken the additional documents into consideration. Our review is limited to the information actually submitted to Aetna. See Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan, 195 F.3d 975, 981-82 (7th Cir. 1999).

evaluations of Bryce and diagnoses performed by various providers in 1996.

Thereafter, Aetna began its medical review. For the first level of review, Monica Oberley, a registered nurse, completed a Clinical Claim Review Referral form, dated December 21, 2000, summarizing in detail Bryce's medical records and making an initial recommendation regarding the appeal. Ms. Oberley recommended affirming the denial of benefits, and the "rationale for [her] decision" was as follows:

> This is a very complicated case. I had denied s.t. based on child with autism and based on initial review it appeared to be d/t his autism and they are doing some sensory integration in his therapy. Parents had stated he spoke some until he was 18mo old and then stopped. This plan does have eep general exclusions and speech must be restorative. New information states he had several episodes of otitis media and eventually had tube placement. Hearing test prior to placement was wnl. Upon diagnosis of autism it was stated it is normal for children with autism to lose speech at that age. The o.t. was denied as we do not cover o.t. for learning or developmental delays and feel the listening program is more geared to sensory integration. We would also deny the ABA as it is more sensory integration related and we would not cover. The therapies are also billing cpt code (99362) which we have been told is for conferences with teachers. We have paid intermittent claims for therapies. A letter was sent from a Member Service Representative to member on 4/6/00 stating that some claims had been paid in error and it was not felt we should collect overpayments for those claims but not felt we should pay any further. I do note that a few claims were paid after that date.
> Unsure if we should benefit the speech therapy even though he is making some progress because it seems to be more geared for sensory integration and I am not sure if the loss of speech was d/t the otitis media or the autism. I do not feel we should cover the O.T. or the ABA as it appears to be for the autism and not for a

disease or injury. Feel it is more sensory integration related also. We should not allow the ept codes 99362 for teacher conferences.

(Id., Ex. B, at 577-78.) The appeal was then referred to a Medical Director for Aetna, Dr. John Reed.

On January 11, 2001, Dr. Reed completed a "CMM Medical Director Referral Response" regarding the Wheelers' appeal. It is unclear what documents Dr. Reed reviewed in order to make his decision. His decision was as follows, in relevant part:

> Do not approve benefits for the multiple requested therapies (speech, occupational, physical, and Applied Behavioral Analysis), as this member's plan excludes therapies for conditions of developmental delay, learning or educational problems, and non-restorative medical conditions. Also, Aetna coverage policy notes that sensory integration therapy is not covered, as the effectiveness of sensory integration therapy has not been proven.

(Id., Ex. B, at 659.) On January 25, 2001, Dr. Reed sent a letter to Mr. Wheeler, quoted infra, notifying Mr. Wheeler that Aetna was "unable to approve payment for the services requested." (Id., Ex. B, at 667-68.) Dr. Reed stated that the Wheelers had the right to a second appeal of Aetna's determination.

The Wheelers appealed again. On May 1, 2001, Dr. Joel Hellmann, another Medical Director for Aetna, completed the "CMM Medical Director Referral Response" for the second appeal. Dr. Hellmann concluded that Aetna should deny coverage for all of the therapies except for the first six months of speech therapy. His "explanation/rationale" was as follows:

Aetna U.S. Healthcare provides coverage for Speech therapy subject to plan descriptions and benefit limitations. In general, speech therapy is covered for the treatment of non-chronic conditions, for acute illness and injuries that result in an impairment in the ability to speak, or when the patient has a speech-language disorder that is the result of a disease or injury causing loss of previously existing speech function.

Aetna U.S. Healthcare does <u>not</u> cover sensory (auditory) integration therapy. This procedure has been proposed as a treatment approach to the management of children with various communication, behavioral, emotional, and learning disorders. The effectiveness of this therapy is unproven.

Occupational therapy is a health care service that involves the use of purposeful activities to help people regain performance skills lost through injury or illness. Aetna U.S. Healthcare does not extend coverage for long term occupational therapy in the management of patients with chronic diseases except as indicated in our individual benefit plans.

Aetna U.S. Healthcare does not cover sensory integration therapy. The effectiveness of this therapy has not been proven.

Medical documentation reviewed include [sic] 4/6/00 discussion with customer service, 6/8/00 request for information, and 11/13/00 member response with review of all documents noted in that letter. Documentation establishes that there was one possibly abnormal EEG, not reconfirmed as recommended in the report and "cautiously interpreted"; a more clear diagnosis of autism, delays in language, social, behavioral, perceptual, and motor skills; a 7/15/96 note that the patient was not talking much and didn't seem to hear as well as he had with an impression of repeated OM over a 6-9 month period, marked speech delay, and subsequent invasive treatment with PE tubes; a 9/96 assessment that behaviors diagnostic of autism included unusual eye contact, diminished facial expressiveness, and inadequate co-ordination of eye gaze, vocalization and gesture.

The documentation reviewed indicates the vast majority of problems can be attributable to the primary diagnosis of autism or developmental delay. There is a question as to whether the documented recurrent ear infections caused a loss of some already existing speech function and played a contributory role in the delayed speech development. Based on this review would recommend that a component of

the speech delay be considered to be due to the ear
infections, although this is not entirely clear, and that
speech therapy be considered allowed expenses for a
period of 6 months to allow for the component of speech
delay that may be attributable to the documented ear
infections.
The other services for sensory integration therapy,
occupational therapy would be considered developmental
delays, likely due to the primary diagnosis of autism,
and would not be covered services.

(Id., Ex. B, at 694.)  On May 7, 2001, Dr. Hellmann sent a letter

to plaintiffs' counsel, quoted infra, notifying counsel of his

decision.  Dr. Hellmann also stated that the Wheelers had reached

the final level of appeal available through Aetna.  (Id., Ex. B, at

690-91.)

**The Group Insurance Plan Issued by Aetna and**
**Aetna's Positions Regarding Coverage for Certain Therapies**

The group insurance contract between Aetna and Westmoreland

provides:

For the purpose of . . . ERISA, Aetna is a fiduciary with
complete authority to review all denied claims for benefits
under this policy.  This includes, but is not limited to, the
denial of certification of the medical necessity of hospital
or medical treatment.   In exercising such fiduciary
responsibility, Aetna shall have discretionary authority to:
   determine whether and to what extent employees and
   beneficiaries are entitled to benefits; and
   construe any disputed or doubtful terms of this policy.

Aetna shall be deemed to have properly exercised such
authority unless Aetna abuses its discretion by acting
arbitrarily and capriciously.

(Aetna's Statement of Material Facts, Ex. D, Group Life and

Accident and Health Insurance Policy, at 9190.)

Regarding benefits, the relevant terms of the policy, as set forth in the Summary Plan Description, are as follows:

- "Charges incurred by a person for the effective treatment of . . . a mental disorder while not confined as a full-time inpatient in a hospital; or treatment facility; are Covered Medical Expenses."

- "Effective Treatment of a Mental Disorder" is defined as a "program that: is prescribed and supervised by a physician; and is for a disorder that can be favorably changed."

- A "mental disorder" is defined as "a disease commonly understood to be a mental disorder whether or not it has a physiological or organic basis and for which treatment is generally provided by or under the direction of a mental health professional such as a psychiatrist, a psychologist or a psychiatric social worker. A mental or nervous disorder includes; but is not limited to: . . . Pervasive Mental Developmental Disorder (Autism)."

- Coverage is not provided for charges "for or related to services, treatment, education testing or training related to learning disabilities or developmental delays."

- Coverage is not provided for charges "for or in connection with speech therapy. This exclusion does not apply to charges for speech therapy that is expected to restore speech to a person who has lost existing speech function (the ability to express thoughts, speak words, and form sentences) as the result of disease or injury."

- Coverage is not provided for charges "for services and supplies [n]ot necessary, as determined by Aetna, for the diagnosis, care or treatment of the physical or mental condition involved. This applies even if they are prescribed, recommended or approved by the attending physician or dentist."

- A service is "necessary" "if Aetna determines that it is appropriate for the diagnosis, the care or the treatment of the disease or injury involved."

- To be "appropriate," the service must "[b]e care or treatment, as likely to produce a significant positive outcome as, and no more likely to produce a negative outcome than, any alternative service or supply, both as to the disease or injury involved and the person's overall health condition."

- "In determining if a service or supply is appropriate under the circumstances, Aetna will take into consideration: [i]nformation provided on the affected person's health status; [r]eports in peer reviewed medical literature; [r]eports and guidelines published by nationally recognized health care organizations that include supporting scientific data; [g]enerally recognized professional standards of safety and effectiveness in the United States for diagnosis, care or treatment; [t]he opinion of health professionals in the generally recognized health specialty involved; and [a]ny other relevant information brought to Aetna's attention."

(Aetna's Statement of Material Facts, Ex. C, Summary Plan Description, at 18, 20, 22, 36, 38, 41, 42.)

Aetna issues Coverage Policy Bulletins ("CPBs"), which express Aetna's position as to whether certain services or treatments meet the requirements for coverage under its plans. The CPBs include reviews of medical literature. On August 27, 1999, Aetna issued a CPB stating that "sensory (auditory) integration therapy" is not covered because its effectiveness is unproven. (Aetna's Statement of Material Facts, Ex. B, at 729-30.) On October 19, 1998, Aetna issued a CPB relating to occupational therapy, which states that Aetna "does not extend coverage for long term occupational therapy in the management of patients with chronic diseases except as indicated in our individual benefit plans." (Id. at 5-6.) The

plan documents here do not state that long-term occupational therapy for the treatment of chronic diseases is covered.

### *This Action*

Plaintiffs filed this action in August 2001, alleging the wrongful denial of benefits by Aetna in violation of the Employment Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"). In their complaint, plaintiffs seek an order directing Aetna to resume payment for Bryce's therapies and to pay previous charges incurred for those therapies, in addition to attorney's fees and costs. Aetna now moves for summary judgment.

## DISCUSSION

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d

1090, 1095 (7th Cir. 1998) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." <u>McGrath v. Gillis</u>, 44 F.3d 567, 569 (7th Cir. 1995).

Plaintiffs concede that our review is limited to determining whether the denial of benefits was "arbitrary and capricious." This is because the plan delegated to Aetna the fiduciary responsibility and discretionary authority to interpret the plan's terms and determine eligibility for benefits. <u>See</u> <u>Herzberger v. Standard Ins. Co.</u>, 205 F.3d 327, 331 (7th Cir. 2000).

"Under the arbitrary and capricious standard, a plan administrator's decision should not be overturned as long as (1) 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome,' (2) the decision 'is based on a reasonable explanation of relevant plan documents,' or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.'" <u>Hess v. Hartford Life & Accident Ins. Co.</u>, 274 F.3d 456, 461 (7th Cir. 2001) (citation omitted). Although the arbitrary and capricious standard grants significant deference to the plan's determination of eligibility, our review is not simply a "rubber stamp": "[I]f fiduciaries or administrators of an ERISA

plan controvert the plain meaning of a plan, their actions are arbitrary and capricious." <u>Swaback v. American Info. Techs. Corp.</u>, 103 F.3d 535, 540 (7th Cir. 1996). The arbitrary and capricious standard, though deferential, nonetheless requires "a 'rational' connection between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached." <u>Exbom v. Central States, S.E. & S.W. Areas Health & Welfare Fund</u>, 900 F.2d 1138, 1143 (7th Cir. 1990) (citation omitted).

Aetna was required to give the Wheelers every reason for its denial of benefits at the time of denial.[5] <u>See</u> <u>Reich v. Ladish Co.</u>, 306 F.3d 519, 524 n.1 (7th Cir. 2002). There are three letters in the record that Aetna sent to plaintiffs which state Aetna's reasons for the denial of benefits for Bryce's various therapies.[6] We will quote the relevant portions of each letter, beginning with the April 6, 2000 letter from Mary M. Hurley:

> Dear Mr. Wheeler:
>
> This letter serves as a reiteration of the telephone discussion that I had today with Mrs. Wheeler concerning the ongoing treatment that Bryce has been and is continuing to receive from three different providers: Early Intervention Approaches, Therapeutic Resources, Inc., and Children's Therapy & Resource Center.

---

[5] Therefore, we will not consider additional reasons for Aetna's denial of benefits, to the extent that it attempts to bolster its decisions at this juncture.

[6] The letters are replete with grammatical errors, repetitions, and sentences that are incomplete and difficult to understand. We quote the letters verbatim.

Sensory integration treatment is not covered under your health benefits plan with Aetna U.S. Healthcare for any diagnosis. It is excluded from coverage and there is no documentation that you or the provider(s) can give to us that will allow it to be covered.
. . .

Physical therapy, occupational therapy, and speech therapy, if billed in relation to autism, is not covered.

All instances where we have reviewed these services prior to payment have been denied. Upon review of the file, it does appear that sporadic claims have been allowed without review in error. Despite these errors in payment, we are not seeking overpayment refunds from your providers at this time.

The last issue is speech therapy. Currently, the standing review does indicate that all charges for speech therapy should be denied as well. However, as I mentioned to Mrs. Wheeler on the phone, there is a chance that speech therapy charges for Bryce can be covered because the loss of speech may have been related to otitis media (ear infections). To appeal our denial, we are in need of the following items before the file can be referred to the Independent Medical Consultant for review:
1.    Initial evaluation for speech therapy
2.    The first two months of speech therapy notes
3.    The name and address of the doctor who was treating Bryce for ear infections
4.    That doctor's notes from that treatment
It is my hope that with this additional information surrounding Bryce's speech therapy that the review will come back more favorably and benefits will be allowed for that portion of his treatment.
. . .
Sincerely,
Mary M. Hurley, Customer Service Team Leader
Aetna U.S. Healthcare

(Aetna's Statement of Material Facts, Ex. B, at 257-58).

The letter to the Wheelers from Dr. Reed, who reviewed the first appeal, states in pertinent part:

Dear Mr. Wheeler:

We have received your request to reevaluate our determination regarding a predetermination of benefits for Bryce Wheeler for the proposed multiple requested therapies (speech, occupational, physical), and Applied Behavioral Analysis. After completing this review, we are unable to approve payment for the services requested.

Coverage is provided for a service which is necessary. A service furnished by a particular provider is necessary if Aetna U.S. Healthcare determines that it is appropriate for the diagnosis, the care, or treatment of the disease or injury involved. After review of the medical documentation submitted, it has been determined that the multiple requested therapies (speech, occupational, physical), and Applied Behavioral Analysis will not be covered benefits under the provisions of the Plan.

The medical staff is unable to approve benefits for the multiple requested therapies (speech, occupational, physical, and Applied Behavioral Analysis), as this member's plan excludes therapies for conditions of developmental delay, learning or educational problems, and non-restorative medical conditions. Also, sensory integration therapy is not covered, as Aetna coverage policy notes its effectiveness has not been proven.
. . .
Despite this determination about plan benefits, we want to emphasize that the member and physician still make the final determination whether the proposed treatment is performed.

You have the right to a second appeal of our determination. . . .

Sincerely,
John B. Reed, D.O.
Medical Director

(Id., Ex. B, at 667-68.)

The third letter, which was sent to counsel for the Wheelers,

was signed by Dr. Hellmann. It states in relevant part:

Dear Attorney Saphire-Bernstein:

We have received your request for a final review of benefit reimbursement of the speech therapy, occupational therapy and sensory integration therapy for Bryce Wheeler. After completing this review, we are unable to approve payment for these services.

Under the Plan, benefits for speech therapy are not covered. Aetna US Healthcare provides coverage for speech therapy subject to plan descriptions and benefit limitations. In general, speech therapy is covered for the treatment of non-chronic conditions, for acute illness and injuries that result in an impairment in the ability to speak, or when the patient has a speech-language disorder that is the result of a disease or injury causing loss of previously existing speech function.

Aetna US Healthcare does <u>not</u> cover sensory (auditory) integration therapy. This procedure has been proposed as a treatment approach to the management of children with various communication, behavioral, emotional, and learning disorders. The effectiveness of this therapy is unproven.

Occupational therapy is a health care service that involves the use of purposeful activities to help people regain performance skills lost through injury or illness. Aetna US Healthcare does not extend coverage for long term occupational therapy in the management of patients with chronic diseases except as indicated in our individual benefit plans.

Aetna US Healthcare does not cover sensory integration therapy. The effectiveness of this therapy has not been proven.

Medical documentation reviewed include 4/6/00 discussion with customer service, 6/8/00 request for information, and 11/13/00 member response with review of all documents noted in that letter. Documentation establishes that there was one possibly abnormal EEG, not reconfirmed as recommended in the report and "cautiously interpreted"; a more clear diagnosis of autism; delays in language, social, behavioral, perceptual and motor skills, a 7/15/96 note that the patient was not talking much and didn't seem to hear as well as he had with an impression of repeated OM over a 6-9 month period, marked speech delay, and subsequent invasive treatment with PE tubes,

a 9/96 assessment that behaviors diagnostic of autism included unusual eye contact, diminished facial expressiveness, and inadequate coordination of eye gaze, vocalization and gesture.

The documentation reviewed indicates the vast majority of problems can be attributable to the primary diagnosis of autism or developmental delay. There is a question as to whether the documented recurrent ear infections caused a loss of some already existing speech function and played a contributory role in the delayed speech development. Based on this review we would recommend that a component of the speech delay be considered to be due to the ear infections, although this is not entirely clear, and that speech therapy be considered allowed expenses for a period of 6 months to allow for the component of speech delay that may be attributable to the documented ear infections.

The other services for sensory integration therapy, occupational therapy would be considered developmental delays, likely due to the primary diagnosis of autism, and would not be covered services. Therefore, the Plan will not cover these services.

With this review, your request for benefit reimbursement of health care services has reached the final level of appeal available through Aetna U.S. Healthcare. . . .

Sincerely,
Joel B. Hellmann, MD
Medical Director

(Id., Ex. B, at 690-91.)

A few initial comments regarding the three letters are in order. Our first observation upon reviewing these letters is that they utterly fail to consider the actual language of the plan at issue here. The letters also largely fail to connect Aetna's denial of benefits to the specific situation and Bryce's diagnoses. Ms. Hurley's letter is cursory and simply states that sensory integration therapy is not covered, without explaining why. As for

the other therapies, Ms. Hurley states that they are not covered "if billed in relation to autism," which is simply incorrect, given that autism is a covered condition under the plan.[7] Dr. Reed's letter is similarly cursory. He invokes the exclusion of coverage for treatment that Aetna deems not necessary, but fails to state whether it is Aetna's position that any of the therapies are in fact not necessary. Dr. Reed states that benefits for the "multiple requested therapies" will be denied because the plan does not cover "conditions of developmental delay, learning or educational problems, and non-restorative medical conditions." This statement completely ignores the diagnosis of autism. Dr. Reed further explains that sensory integration therapy is not covered because its effectiveness has not been proven, but does not tie this explanation to any particular language of the plan.

Dr. Hellmann's letter is the most intelligible and comprehensive of the three letters (which is not saying much, as we will discuss _infra_). Therefore, we will use it as our primary basis for reviewing Aetna's denial of benefits.

### Speech Therapy

Dr. Hellmann states that "[i]n general, speech therapy is covered for the treatment of non-chronic conditions, for acute illness and injuries that result in an impairment in the ability to speak, or when the patient has a speech-language disorder that is

---

[7] Aetna concedes that autism is a covered condition under the plan.

the result of a disease or injury causing loss of previously existing speech function." The question is not, however, what is covered "in general." The question is what the plan specifically provides. The summary plan description states that the exclusion of coverage for speech therapy does not apply to charges for speech therapy "that is expected to restore speech to a person who has lost existing speech function (the ability to express thoughts, speak words, and form sentences) as the result of a disease or injury." (Aetna's Statement of Material Facts, Ex. C, Summary Plan Description, at 22.) The text pertaining to speech therapy makes no reference to or distinction between "non-chronic" or "chronic" conditions.[8]

Thus, for speech therapy to be a covered benefit under the plan, (1) there must have been existing speech function, (2) lost as the result of disease or injury, (3) which is expected to be restored by the therapy. Dr. Hellmann never explains why, in Aetna's view, Bryce's therapy does not meet this test. He does not explain whether it is Aetna's view that autism (which is considered under the plan to be a "disease," see definitions _supra_) did not cause Bryce to lose existing speech function, or whether Aetna considers the therapy to be non-restorative, or both. Instead, Dr.

---

[8] We recognize that whether a condition is chronic affects the question of whether speech therapy can be expected to restore function. However, we point out the absence of language in the plan regarding "chronic" conditions because Aetna characterizes autism as a "chronic" condition, and then argues from this characterization that Bryce's therapies are accordingly not covered. There is no basis in the plan for making this "chronic/non-chronic" distinction, or for so simplifying the analysis regarding speech therapy.

Hellmann glosses over autism as the possible cause and goes right to the ear infections: "There is a question as to whether the documented recurrent ear infections caused a loss of some already existing speech function and played a contributory role in the delayed speech development. Based on this review we would recommend that a component of the speech delay be considered to be due to the ear infections, although this is not entirely clear, and that speech therapy be considered allowed expenses for a period of 6 months to allow for the component of speech delay that may be attributable to the documented ear infections." (Aetna's Statement of Material Facts, Ex. B, at 691.)

Dr. Hellmann is correct that it is not entirely clear from the medical history whether the ear infections played a role in Bryce's speech problems. However, there are several indications in the medical history that Bryce's speech problems stem from autism. First, there is a psychological evaluation, dated September 4, 1996, by Dr. Allan Bloom of the Child Evaluation Center. The evaluation indicates that Bryce had "fairly normal" speech development until he was about 18 months old, at which time there was "an alarming and precipitous drop in communication . . . . Prior to 18 months, Bryce was using many single words, as well as some word combinations. At this present time, the youngster was essentially nonverbal." (Id. at 556.) After observing Bryce, Dr. Bloom diagnosed Bryce with autism and stated that "[t]he decline in

communication at 18 months was consistent with the development and pattern of many children with autism." Dr. Bloom added: "Bryce will obviously require intensive speech and language therapy." (<u>Id.</u> at 558.)

Dr. Bloom's report was issued in the context of the Child Evaluation Center's more extensive examination of Bryce. The Center's comprehensive evaluation, authored by two pediatricians, states: "Bryce is a 31 month old youngster who was referred to the Child Evaluation Center because of concerns about his <u>loss of ability to talk</u>, odd behaviors and attention problems. . . . During the first 18 months of his life, Bryce seemed to have normal language development. He had acquired the ability to say things such as, "Wow," "What's that?" (while pointing with two fingers). After losing this ability, however, he is beginning to make some gains in that he now babbles . . . ." The report also contains a diagnosis of autism. (<u>Id.</u> at 561-66 (emphasis added).) Furthermore, it is the opinion of Bryce's treating physician, Dr. Chez, that the loss of Bryce's speech function resulted from "pathological brain activity." (<u>Id.</u> at 504.)[9] Thus, there is support in the medical history from which to conclude that autism caused Bryce to lose previously existing speech skills. Conversely, there is no indication in the medical history that the loss of speech skills was caused by anything else (save the ear

---

[9] "Pathological" means "diseased" or "altered by disease." <u>Webster's Third New International Dictionary</u> 1655 (1971).

infections).[10]  Aetna has offered no reasoned explanation for why it ignored this support.

We move on to the question of whether the therapy is expected to restore Bryce's speech.  Again, it is unclear whether Aetna's position is that the therapy is non-restorative, but even if it were, there is no basis in the medical records for that conclusion. The August 18, 2000 "Speech and Language Treatment Plan Summary," completed by Bryce's speech and language pathologist at the Children's Therapy and Resource Center, indicates that Bryce "continued to respond well to individual speech and language therapy," that pictures and gestures were used to elicit speech, and that Bryce's spontaneous use of speech increased.  (Id. at 521.)  One of the long-term goals set for Bryce is a "functional communication system."  (Id.)  In addition, Dr. Chez states that speech therapy will enable Bryce to "continue to increase his processing ability" and that speech therapy is important "in order to restore the loss of function that came about as a result of pathological brain activity."  Dr. Chez recommends a minimum of 2 to 3 speech therapy sessions per week.  (Id. at 504.)

We conclude that Aetna failed to acknowledge the actual language of the plan provisions and failed to analyze Bryce's

---

[10]/ We do not find unreasonable Aetna's determination that the medical history is unclear as to whether the ear infections resulted in or contributed to the loss of speech.  (Aetna's position, evidently, is that if the loss of speech were due to ear infections, the therapy would be covered.)  The medical history indicates that Bryce was experiencing ear infections at approximately the same time his loss of speech occurred, but none of Bryce's providers attributes the loss of speech to the ear infections.

speech problems, in light of the medical records, in accordance with those plan provisions. Aetna did not and does not explain why it rejected the opinions of Bryce's medical providers. Aetna also chose not to conduct an independent medical examination. Because Aetna failed to make a rational connection between the evidence, the plan language, and its conclusion to terminate speech therapy benefits, its termination of benefits was arbitrary and capricious.

### *Sensory Integration Therapy*

Regarding sensory integration therapy, Dr. Hellmann states: "Aetna US Healthcare does <u>not</u> cover sensory (auditory) integration therapy. This procedure has been proposed as a treatment approach to the management of children with various communication, behavioral, emotional, and learning disorders. The effectiveness of this therapy is unproven." (<u>Id.</u> at 690.)

There is no exclusion under the plan for therapies whose "effectiveness . . . is unproven." Dr. Hellmann never states that Aetna determined that sensory integration therapy is unnecessary for Bryce's treatment. For purposes of this motion, we will assume that Dr. Hellmann is implying that sensory integration treatment is unnecessary. (That is the argument Aetna advances in its briefs.)[11] Even giving the letter this generous interpretation, though, it is

---

[11] Aetna does not argue, nor do the letters state, that the charges for sensory integration therapy were not for the "effective treatment of a mental disorder" as that phrase is defined in the plan. Aetna does not argue that the therapy was not prescribed and supervised by a physician or that it is for a disorder that cannot be favorably changed.

clear that such a conclusion was arbitrary and does not comport with the plain language of the plan.

We begin with the plan's definitions of "necessary" and "appropriate" treatment. A service is "necessary" if it is "appropriate for the diagnosis, the care or the treatment of the disease or injury involved." (Aetna's Statement of Material Facts, Ex. C, Summary Plan Description, at 42.) To be "appropriate," treatment must be "as likely to produce a significant positive outcome as, and no more likely to produce a negative outcome than, any alternative service or supply, both as to the disease or injury involved and the person's overall health condition." (Id.) Furthermore, the plan states that when determining if a service is appropriate "under the circumstances, Aetna will take into consideration" information provided on the affected person's health status." (Id. (emphasis added).)

It is clear from the terms of the plan that the necessary/appropriate determination will involve an individualized determination, considering the particular circumstances, medical condition, and health condition, of the possible outcome of a certain treatment relative to alternative treatments. No such determination was made here with respect to Bryce. Aetna does not state that the sensory integration therapy was not as likely to produce a significant positive outcome as and no more likely to produce a negative outcome than any alternative treatments, nor

does Aetna state what the possible alternative treatments are. Moreover, there was no individualized determination of what was necessary or appropriate treatment in light of Bryce's particular situation. Instead, Aetna refers (in its briefs, not in its letters to the Wheelers) to its "Coverage Policy Bulletin," which states that Aetna will not cover sensory integration therapy.

As with the analysis regarding speech therapy, this constituted cursory analysis that did not comport with the terms of the plan. Aetna may very well have a "Coverage Policy Bulletin" relating to sensory integration therapy, but it failed to consider the express terms of the plan--the definitions of "necessary" and "appropriate," and it failed to make a rational connection between the particular medical evidence and its conclusion to terminate benefits for this therapy. Aetna's decision regarding these benefits, therefore, was arbitrary and capricious.

### *Physical/Occupational/Applied Behavioral Analysis Therapies*

Regarding occupational therapy, Dr. Hellmann states as follows: "Occupational therapy is a health care service that involves the use of purposeful activities to help people regain performance skills lost through injury or illness. Aetna US Healthcare does not extend coverage for long term occupational therapy in the management of patients with chronic diseases except as indicated in our individual benefit plans." (Aetna's Statement of Material Facts, Ex. B, at 690.) In addition, Dr. Hellmann

states: "The other services for sensory integration therapy, occupational therapy would be considered developmental delays, likely due to the primary diagnosis of autism, and would not be covered services." (Id. at 691.) Dr. Hellmann does not refer specifically to either physical or applied behavioral analysis therapy, but Dr. Reed's letter states: "The medical staff is unable to approve benefits for the multiple requested therapies (speech, occupational, physical, and Applied Behavioral Analysis), as this member's plan excludes therapies for conditions of developmental delay, learning or educational problems, and non-restorative medical conditions."[12] (Id. at 667.)

Dr. Hellmann's first reason for denying benefits for occupational therapy is that Aetna does not cover "long term occupational therapy" for patients with "chronic diseases." This conclusion evidently is based on a Coverage Policy Bulletin, but it is not based on any language of the plan. There is no language in the plan carving out a "chronic disease" or a "long-term therapy" exception to coverage. Accordingly, this reasoning is wholly arbitrary.

Dr. Hellmann and Dr. Reed provide a second reason for the denial of benefits: the therapies are related to developmental

---

[12] There is no basis in the plan language for the "non-restorative medical conditions" portion of this reasoning. As for the "learning or educational problems" portion, the exact language of the plan refers to "learning disabilities." (Aetna's Statement of Material Facts, Ex. C, Summary Plan Description, at 22.) Even a cursory review of the medical history shows that Bryce has not been diagnosed with a learning disability.

delays--which may or may not be due to autism, depending on whose letter you read. Dr. Reed states that Aetna does not cover "therapies for conditions of developmental delay." (<u>Id.</u> at 667.) Dr. Hellmann's version of this reasoning is that occupational therapy is not covered because it is related to "developmental delays, likely due to the primary diagnosis of autism." (<u>Id.</u> at 691.)

Aetna's position in its briefs is somewhat unclear--it seems to want to have it both ways and relies on both versions of the developmental delay argument. Dr. Reed's position appears to be that the therapies are not covered benefits because they relate to developmental delays and not autism. There is no explanation for how Dr. Reed or Aetna came to this conclusion, and it is arbitrary given the records. The diagnosis of autism is primary and pervasive throughout Bryce's medical records. Dr. Hellmann, on the other hand, states that the developmental delays in his opinion are likely <u>due to</u> the autism. Aetna admits that autism is a covered condition under the plan. Thus, there is a tension here, unless Aetna's position is that developmental delays are not covered even if they are caused by autism.

The plan is ambiguous regarding this issue. Charges for the effective treatment of mental disorders are clearly covered, and autism (which the plan also deems "Pervasive Mental Developmental Disorder") is explicitly included as a mental disorder. However,

the plan excludes coverage for treatment "related to" "developmental delays."

We interpret the terms of the policy "in an ordinary and popular sense as would a [person] of average intelligence and experience." <u>Phillips v. Lincoln Nat'l Life Ins. Co.</u>, 978 F.2d 302, 308 (7th Cir. 1992). Ambiguous terms in an insurance contract are strictly construed in favor of the insured. <u>See</u> <u>id.</u> Accordingly, we find that the "developmental delay" exclusion is inapplicable to developmental delays caused by autism. This reading is the only reasonable reading of the plan and comports with the plan's own definition of autism. Defining autism as a developmental disorder, but then excluding treatment for developmental delays caused by autism, would in effect render the provision for coverage for autism meaningless.

Therefore, under either version of the "developmental delay" argument, Aetna's decision to deny benefits for the physical, occupational, and applied behavioral analysis therapies was arbitrary and capricious. Aetna either misconstrued the terms of the plan in an arbitrary fashion, or it concluded with absolutely no basis in the medical records that the therapies were related to developmental delays unrelated to autism.

## CONCLUSION

We find as a matter of law that Aetna's termination of benefits for all of Bryce Wheeler's therapies was arbitrary and

capricious. It appears that on the basis of this finding, summary judgment for the <u>plaintiffs</u> would be appropriate, but plaintiffs have not cross-moved for summary judgment. Therefore, we will give defendant leave to file a memorandum, if it wishes, showing cause why we should not enter summary judgment for plaintiffs. Defendant may file this memorandum by August 4, 2003.

Defendant's motion for summary judgment is denied.


DATE:      July 21, 2003


ENTER:     _____
           John F. Grady, United States District Judge